UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-30064 (AMN) |
|     JEHUJAH J. McNEILLY, | : | Chapter 13 |
|     *Debtor* | : | |
| | : | |
|     SCOTT CHARMOY, ESQ., | : | |
|     *Applicant* | : | |
| v. | : | |
|     JEHUJAH J. MCNEILLY, | : | |
|     *Respondent* | : | Re: ECF No. 55 |

**RULING AND ORDER ALLOWING
COMPENSATION OF $4,060.00 TO ATTORNEY CHARMOY**

Before the court is an amended application for compensation filed pursuant to 11 U.S.C. § 330 by Scott M. Charmoy, Esq. ("Attorney Charmoy"), former counsel to the debtor, Jehujah J. McNeilly ("Ms. McNeilly"), seeking allowance of attorney's fees and costs totaling $8,650.00 incurred in the representation of Ms. McNeilly in this chapter 13 case.[1] ECF No. 55. Ms. McNeilly objected to the fee request asserting that she had already paid Attorney Charmoy approximately $16,110.00 for legal services in this bankruptcy proceeding and should owe nothing further. ECF No. 48.

For the reasons that follow, the court allows compensation (including allowance of attorney's fees and allowance of reimbursement of costs) in the total amount of $4,060.00. The court finds that Ms. McNeilly paid $2,700.00 to Attorney Charmoy in connection with this bankruptcy proceeding, leaving a balance due of $1,360.00.

---

[1] During a hearing held on May 22, 2017, Attorney Charmoy clarified he sought allowance of $8,650.00 but sought payment of only $4,500.00. Testimony of Attorney Charmoy (Testimony is referenced hereafter as "Test. [Name of Witness]"), ECF No. 83 at 00:34:10 - 00:35:36; 01:22:25 - 01:23:35.

1

## I. RELEVANT PROCEDURAL HISTORY

On January 16, 2015 (the "Petition Date"), Ms. McNeilly filed a voluntary chapter 13 bankruptcy petition, with the assistance of Attorney Charmoy. ECF No. 1. As required by Fed.R.Bankr.P. 2016(b) ("Rule 2016"), Attorney Charmoy filed a disclosure of compensation form, then known as Official Form B203.[2] Although the form (the "Form B203") was unsigned, it was electronically filed by Attorney Charmoy via the court's CM/ECF website.[3] The Form B203 reported that Attorney Charmoy had agreed to accept $3,750.00 as compensation for legal services and that he had received all of the fee prior to the Petition Date. ECF No. 1-2, p. 8.

On September 30, 2016, Attorney Charmoy filed an application for compensation seeking allowance of compensation in the amount of $8,650.50, authorization to apply a pre-petition retainer of $2,420.00,[4] and payment of the balance of $6,230.50 through Ms. McNeilly's chapter 13 plan, when confirmed. ECF No. 40. On the same day, Attorney Charmoy moved to withdraw as counsel. ECF No. 41. On October 31, 2016, after notice and a hearing and with Ms. McNeilly's consent, the court granted Attorney Charmoy's motion to withdraw. ECF No. 49.

Ms. McNeilly, proceeding *pro se*, filed an objection to the application for compensation alleging that she had fully compensated Attorney Charmoy. ECF No. 48.

---

[2] The official form in effect on the Petition Date was Official Form B203. The instructions to Official Form B203 included a statement that a copy of the retainer agreement, if any, should be attached to the form. In this case, Attorney Charmoy did not attach any retainer agreement to the Form B203. Effective December 1, 2015, Form B203 was replaced and superseded by Official Form 2030. The requirement to attach a copy of any retainer agreement was not removed and remains a part of the instructions to Official Form 2030.

[3] Pursuant to the United States Bankruptcy Court District of Connecticut's Amended Standing Order No. 7, pertaining to electronic case filing and case management procedures, the electronic filing of any documents by an attorney shall constitute the signature of that attorney under the Bankruptcy Rules, Local Rules, and Rules of Civil Procedure. *See*, Amended Standing Order No. 7, ¶ 4.

[4] The court notes a discrepancy between the remaining amount of the pre-petition retainer reported in the Form B203, the original application for compensation, and the amended application for compensation. The court does not resolve this discrepancy in light of the ultimate ruling on this matter.

2

In her objection, Ms. McNeilly alleged she had agreed to compensate Attorney Charmoy a total of $4,260.00 for legal services, with $3,700.00 as the base fee for the bankruptcy plus a $250.00 consulting fee and a $310.00 filing fee.  ECF No. 48, p. 4.

On November 15, 2016, Attorney Charmoy filed an amended application for compensation seeking approval of $8,650.50 in fees for legal services rendered from January 16, 2015 through and including July 5, 2016 ("Amended Application").  ECF No. 55.  The Amended Application also sought an order allowing application of a pre-petition retainer of $ 1,214.50 and payment of the balance of the fees (of $ 7,436.00) through Ms. McNeilly's chapter 13 plan, when confirmed.

On May 22, 2017, the court held an evidentiary hearing on the Amended Application ("May 22 Hearing").  During the May 22 Hearing, the court admitted exhibits offered by each party and heard testimony from Attorney Charmoy, Ms. McNeilly, and Ms. McNeilly's son, William McNeilly.

After the hearing, on May 26, 2017, Attorney Charmoy filed an Amended Disclosure of Compensation, Official Form 2030, certifying that he had agreed to accept $4,200.00 for legal services rendered in connection with this bankruptcy case ("Amended 2016(b) Disclosure").  ECF No. 85.  As part of the Amended 2016(b) Disclosure, Attorney Charmoy represented that in exchange for the fee of $4,200.00, he had agreed that the scope of his representation would include, among other things, "representation of the debtor in adversary proceedings and other contested bankruptcy matters" but excluded services such as representation in "contested matters."  Compare ¶ 6(d) with ¶ 7 of both ECF No. 1-2, p. 8 and ECF No. 85.[5]

---

[5]    The court notes that the instructions to Official Form 2030 advise attorneys to "[b]e sure to cross out any services listed in question 5 which will not be provided.  Special care should be taken to complete

3

## II.    FINDINGS OF FACT

The court finds the following facts from the record of the case and the testimony and exhibits introduced during the May 22 Hearing.

1. At some point in 2010, Ms. McNeilly, along with her son, William McNeilly, contacted, and met with, Attorney Charmoy for legal assistance in addressing a foreclosure action commenced against Ms. McNeilly relating to her property located at 10 Lester Street, West Haven, Connecticut ("2010 Meeting").  *Test. J. McNeilly*, ECF No. 84 at 00:10:10 – 00:10:30; *Test. W. McNeilly*, ECF No. 83 at 01:29:50 - 01:31:02; and *Test. Charmoy*, ECF No. 83 at 00:32:20 – 00:32:44.

2. Attorney Charmoy had represented William McNeilly before the 2010 Meeting. The evidence shows that Attorney Charmoy provided legal services to William McNeilly related to two cases pending in the United States District Court for the District of Connecticut.  *Test. J. McNeilly*, ECF No. 84 at 00:31:00 – 00:31:30.

3. During the 2010 Meeting, the McNeillys and Attorney Charmoy discussed the option of commencing a chapter 13 bankruptcy case in order to save Ms. McNeilly's 10 Lester Street property.  *Test. Charmoy*, ECF No. 83 at 00:32:20 – 00:32:44.

4. During the 2010 Meeting, Attorney Charmoy estimated that, on average, he charged approximately $4,500.00 to represent a debtor in a chapter 13 bankruptcy proceeding.  *Test. W. McNeilly*, ECF No. 83 at 01:30:50 – 01:32:00.  William McNeilly believed that this amount was on the higher side but in the "ballpark" compared to other estimates he had received from attorneys for chapter 13 cases.

---

questions 5(e) and 6 in detail, specifying services to be rendered and not to be rendered." Questions 5 and 6 in the instructions correspond to questions 6 and 7 in the Form B203 and Amended 2016(b) Disclosure.

4

*Test. W. McNeilly*, ECF No. 83 at 01:31:10 – 01:32:00. William McNeilly advised his mother to proceed with representation by Attorney Charmoy at the amount of $4,500.00. *Test. W. McNeilly*, ECF No. 83 at 01:30:50 – 01:32:00.

5. As a result of the 2010 Meeting, Ms. McNeilly retained Attorney Charmoy to provide legal services to her regarding the foreclosure action on 10 Lester Street and a possible chapter 13 bankruptcy filing. *Test. Charmoy*, ECF No. 83 at 00:32:20 – 00:33:55; *Test. J. McNeilly*, ECF No. 84 at 00:11:40 – 00:11:55; *Test. W. McNeilly*, ECF No. 83 at 01:30:50 – 01:32:00.

6. For the purposes of Attorney Charmoy's pending Amended Application, the relevant terms of engagement by Ms. McNeilly are the terms of his representation relating to the bankruptcy proceeding, rather than the foreclosure proceeding. However, while the evidence is clear that Ms. McNeilly hired Attorney Charmoy for a bankruptcy case, whether a "contested" motion pursuant to 11 U.S.C. § 506(a) was included in the original fee or even contemplated by the parties is unaddressed in the record.

7. Ms. McNeilly testified that she executed Exhibit A, a document entitled "Agreement to Provide Legal Services – Chapter 13 Bankruptcy" ("Retainer Agreement"). *Test. J. McNeilly*, ECF No. 84 at 00:42:15 – 00:42:38. However, she also testified that she did not read or fully understand the Retainer Agreement. *Test. J. McNeilly*, ECF No. 84 at 00:44:00 – 00:44:50; 00:49:00 – 00:49:45.

8. The Retainer Agreement contained the following relevant provisions:
    1. LEGAL SERVICES TO BE PROVIDED: You agree that the LAW FIRM will represent YOU in the following matter:

5

Preparation and filing of a voluntary Chapter 13 bankruptcy petition, attendance at 341 meetings, prosecution of uncontested lien avoidance motions pursuant to 11 U.S.C. § 522 and 11 U.S.C. § 506 and any and all work necessary to confirm an *uncontested* Chapter 13 plan.

The legal work includes consultation and advice, preparation of Chapter 13 schedules, commencement and defense of all appropriate litigation with LAW FIRM'S areas of practice and expertise, drafting of Plan, defense of pre-confirmation motions for relief from stay, lien avoidance, and all matters pertaining to confirming an uncontested Chapter 13 Plan.

LEGAL SERVICES EXCLUDED FROM THIS AGREEMENT include any work not listed above or any work after confirmation of your plan or after conversion of your case, including without limitation matters such as motion to modify the Plan after Confirmation, defense of motions to dismiss or defense of motions for relief from stay, and matters which result from YOUR failure to make payments to the Chapter 13 trustee or to a creditor. If you need any services after confirmation of the Chapter 13 Plan, you will be billed separately under the terms of a separate agreement.

2. ADDITIONAL LEGAL SERVICES. If YOU need any other services which may or may not be related to the above matter, You and the LAW FIRM may make a new agreement to provide the other services.

3. A. INITIAL PAYMENT. The LAW FIRM will begin work on your case upon receipt of part or all of the initial retainer of $3,750.00. … This agreement is null and void unless initial payment is made. You agree that the LAW FIRM may apply to the Court for additional fees, and agree to be responsible for all such additional fees, REGARDLESS OF ANY REDUCTION IN SAME BY THE COURT AND REGARDLESS OF WHETHER YOUR CASE IS CONVERTED TO CHAPTER 7.[6]

B. HOURLY RATE. YOU agree to pay the LAW FIRM for legal services performed pre-confirmation as approved by the Bankruptcy Court at the following current rates:

| Services of | Rate per Hour |
| --- | --- |
| Scott M. Charmoy | $300.00 |
| Sheila S. Charmoy | $300.00 |
| Paralegal | $110.00 |

---

[6] Importantly, the court notes that this paragraph of the Retainer Agreement contains a provision directly contrary to 11 U.S.C. §§ 329 and 330. The court concludes this provision -- "You … agree to be responsible for all such additional fees, REGARDLESS OF ANY REDUCTION IN SAME BY THE COURT AND REGARDLESS OF WHETHER YOUR CASE IS CONVERTED TO CHAPTER 7" -- is unenforceable and against public policy.

> C. ADJUSTMENT OF HOURLY RATES. The LAW FIRM may from time to time adjust its hourly rates. You will be notified 30 days prior to such an adjustment by letter which will set forth the adjustments. You will be billed after the effective date of the adjustment at the new rate.
>
> Exhibit A, p. 1 - 2.

9. Even though the Retainer Agreement was dated December 2010, Ms. McNeilly did not file for bankruptcy until January 16, 2015. ECF No. 1; *Test. Charmoy*, ECF No. 83 at 01:18:56 - 01:19:20. Attorney Charmoy testified that the delay in filing bankruptcy was the result of a decision made to try to avoid foreclosure by obtaining a loan modification. *Test. Charmoy*, ECF No. 83 at 00:32:00 - 00:34:00; 01:18:56 - 01:19:20.

10. The Statement of Financial Affairs (Official Form 7), filed on the Petition Date in this case, reported that Ms. McNeilly made payments to Attorney Charmoy in 2011 related to debt counseling or bankruptcy in the amount of $3,750.00 for legal fees and costs plus $250.00 for a consulting fee. ECF No. 1-2, p. 3.

11. Form B203, filed by Attorney Charmoy, represented that compensation for legal services had been agreed to in the amount of $3,750.00 and that full payment had been received. ECF No. 1-2, p. 8. Form B203 indicated that the scope of the legal services to be provided included, among other things, "negotiations with creditors as necessary" and "representation of the debtor in adversary proceedings and other contested bankruptcy matters" but excluded services such as representation in "contested matters." Compare ¶ 6(d) with ¶ 7 of both ECF No. 1-2, p. 8 and ECF No. 85.

12. Ms. McNeilly testified that when she received invoices from Attorney Charmoy, she paid them because she was concerned that if she did not, she might lose her house. *Test. J. McNeilly*, ECF No. 84 at 00:45:00 – 00:45:30; 00:51:50 - 00:52:18.

7

13. For internal accounting purposes, Attorney Charmoy assigned the following file numbers to the various McNeilly-related matters:

> GSC 173   for legal services related to Ms. McNeilly's foreclosure case;
> GSC 174   for legal services related to William McNeilly's case entitled *Juana Torres-Sotelo v. Mackeyboy Auto, LLC*;
> GSC 175   for legal services related to William McNeilly's case entitled *Thorne et al v. Mackeyboy Auto LLC*; and
> BSC 370   for legal services related to Ms. McNeilly's chapter 13 bankruptcy proceeding.
> *Test. Charmoy*, ECF No. 83 at 00:46:44 - 00:47:47:48.

14. Attorney Charmoy testified that Exhibit F contained copies of all nineteen checks that Ms. McNeilly had delivered for payment of legal services on any of the four McNeilly-related matters (GSC 173, GCS 174, GSC 175, and BSC 370). *Test. Charmoy*, ECF No. 83 at 00:50:30 – 00:51:55.

15. Each check contained notes in the memo line that identified either a file number or case name or William McNeilly or Jean McNeilly. Ms. McNeilly wrote the notes on some, but not all of the checks. *Test. J. McNeilly*, ECF No. 84 at 00:32:00 – 00:32:29.

16. Ms. McNeilly testified that the following checks were provided to Attorney Charmoy for legal services related to the foreclosure:

Exhibit D – check no. 2071 dated June 2, 2010, in the amount of $1,500.00. *Test. J. McNeilly*, ECF No. 84 at 00:32:29 – 00:33:07.

Exhibit D – check no. 2080 dated September 10, 2010, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:35:54 – 00:36:23.

Exhibit D – check no. 2088 dated December 22, 2010, in the amount of $1,500.00. *Test. J. McNeilly*, ECF No. 84 at 00:36:54 – 00:37:17.

Exhibit D – check no. 2219 dated March 9, 2013, in the amount of $910.00. *Test. J. McNeilly*, ECF No. 84 at 00:37:35 – 00:38:02.

Exhibit D – check no. 2245 dated August 9, 2013, in the amount of $500.00; check no. 2246 dated August 16, 2013, in the amount of $500.00; and check no. 2247

dated August 23, 2013, in the amount of $500.00. *Test. J. McNeilly*, ECF No. 00:38:02 – 00:38:50.

Exhibit D – check no. 2281 dated January 17, 2014, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:40:05 – 00:40:20.

17. Ms. McNeilly testified that the following checks were provided to Attorney Charmoy for legal services related to either one of her son's matters:

Exhibit D – check no. 2069 dated June 2, 2010, in the amount of $2,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:33:17 – 00:34:55.

Exhibit D – check no. 2072 dated June 4, 2010, in the amount of $1,500.00. *Test. J. McNeilly*, ECF No. 84 at 00:33:17 – 00:34:55.

Exhibit D – check no. 1261 dated August 6, 2010, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:35:26 – 00:35:35.

Exhibit D – check no. 2077 dated August 20, 2010, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:35:35 – 00:35:52.

Exhibit D – check no. 1023 dated September 10, 2010, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:36:30 – 00:36:42.

Exhibit D – check no. 2089 dated December 22, 2010, in the amount of $1,500.00. *Test. J. McNeilly*, ECF No. 84 at 00:36:44 – 00:36:50.

Exhibit D – check no. 2091 dated March 23, 2011, in the amount of $1,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:37:18 – 00:37:35.

Exhibit D – check no. 2280 dated January 17, 2014, in the amount of $2,000.00. *Test. J. McNeilly*, ECF No. 84 at 00:39:00 – 00:40:09.

18. Ms. McNeilly testified that she did not write the case file numbers that appear on check no. 2306 dated August 18, 2014, check no. 2314 dated October 17, 2014, and check no. 2328 dated December 29, 2014 contained in Exhibit D. *Test. J. McNeilly*, ECF No. 84 at 00:40:20 – 00:41:16.

19. The court finds that check no. 2306 dated August 18, 2014, in the amount of $4,000.00, was not intended as payment for legal services in connection with the bankruptcy proceeding based upon: (a) Ms. McNeilly's testimony that she paid the

9

invoices when they arrived; (b) Exhibit H that contained an invoice dated August 3, 2014 for legal services rendered in connection with the foreclosure in the amount of $2,860.48; (c) the time records submitted with Exhibit G that indicated that no legal services were provided around August 2014 in connection with the bankruptcy; and (d) the Petition Date that was five months later than the check date.

20. Regarding check no. 2314 dated October 17, 2014, in the amount of $1,500.00 and check no. 2328 dated December 29, 2014, in the amount of $1,200.00, the evidence is uncontested that Attorney Charmoy designated those payments to be applied to legal fees for the bankruptcy (*see*, Exhibit E) and that Ms. McNeilly also believed that those payments would be applied to her bankruptcy case fees (*see*, Exhibit C).

21. The court finds that before the Petition Date, Ms. McNeilly paid Attorney Charmoy $2,700.00 intended as compensation for her bankruptcy case.

22. Attorney Charmoy testified that he and his firm provided a total of 26.6 hours of legal services to Ms. McNeilly in connection with the chapter 13 bankruptcy. *Test. Charmoy*, ECF No. 83 at 00:33:45 – 00:34:06.

23. Part of the services provided included resolution of a contested matter, or a motion pursuant to 11 U.S.C. § 506(a) ("Contested §506(a) Motion"). *See*, ECF No. 38. Attorney Charmoy spent approximately 12.2 hours valued at $3,660.00[7] resolving the Contested § 506(a) Motion. Exhibit G.

---

[7] The court notes that, in Exhibit G, Attorney Charmoy calculated the value of the 12.2 hours spent resolving the contested § 506(a) motion at a rate of $375.00 per hour, totaling $4,575.00. No evidence was submitted that the rate of $375.00 per hour was agreed to by the parties and accordingly, the court applies the rate of $300.00 per hour as stated in the signed Retainer Agreement (*see*, Exhibit A) to the hours spent resolving the contested § 506(a) motion.

24. Attorney Charmoy testified that the value of legal services provided for the entire chapter 13 case totaled $8,650.00, but he was only seeking payment of $4,500.00 based upon a voluntary reduction. *Test. Charmoy*, ECF No. 83 at 00:34:00 – 00:34:27.

### III. **APPLICABLE LAW AND BURDEN OF PROOF**

Pursuant to 11 U.S.C. § 329 and in accordance with Fed.R.Bankr.P. 2016(b), an attorney representing a debtor in a bankruptcy case is required to file a statement of the compensation paid or agreed to be paid. 11 U.S.C. § 329(a). As with all documents filed with the court, an attorney filing a disclosure pursuant to § 329 must adhere to the mandates of Fed.R.Civ.P. 11, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9011. Section 329 of the Bankruptcy Code and Rule 2016 recognize the court's traditional concern for the need to carefully scrutinize the compensation paid to a debtor's attorney and to provide protection to the debtor, the estate, and creditors. 3-329 *Collier on Bankruptcy* ¶ 329.01 (16th). This disclosure obligation is mandatory and not permissive, regardless of whether counsel will seek compensation from the estate, and is central to the integrity of the bankruptcy process. 3-329 *Collier on Bankruptcy* ¶ 329.01 (16th). "The Bankruptcy Code requires fee disclosure so that courts can prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid." *In re Gorski*, 519 B.R. 67, 71 (Bankr.S.D.N.Y. 2014).

The allowance of compensation for debtors' counsel in a chapter 13 case is governed by the operation of 11 U.S.C. § 330. Section 330 provides in relevant part, that "[i]n a … chapter 13 case …, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor."

11 U.S.C. § 330(a)(4)(B). The court's allowance of reasonable compensation is implicitly founded upon an attorney's retention agreement or the existence of a contractual basis under state law to counsel's right to payment. *In re Murray*, 2007 Bankr. LEXIS 2737, 2007 WL 2317523 (Bankr.E.D.Pa. 2007). The definition of the kind of services that benefit the debtor includes services that facilitate the successful completion of the debtor's plan, the normal steps of preparing the debtor's statements, schedules, and plan, as well as representing the debtor in claims litigation. 3-330 *Collier on Bankruptcy* ¶ 330.03 (16th). Other considerations to be factored into the consideration of whether an attorney's fee request is reasonable include the expertise of the attorney; the time expended by him or her the reasonableness of the time given the nature, importance, and complexity of the case and the reasonableness of the billing rates requested. 11 U.S.C. § 330(a)(3). In addition, courts consider public policy concerns when awarding fees. *In re Moukazis*, 479 B.R. 247, 249 (Bankr.E.D.N.Y. 2012).

The fee applicant bears the initial burden to prove that the services for which compensation is sought were reasonable and necessary. *In re Voll*, 512 B.R. 132, 141 (Bankr.N.D.N.Y. 2014). Once the applicant carries its burden of showing the reasonableness and necessity of its services and its fees, the burden shifts to the objecting party to produce evidence showing that the applicant has requested an unreasonable amount. *In re Quigley Company, Inc.*, 500 B.R. 347, 357 (Bankr.S.D.N.Y. 2013). Even where there are no specific objections, "it is incumbent upon the bankruptcy court to conduct its own independent analysis of all applications for compensation." *In re Voll*, 512 B.R. 132, 141 (Bankr.N.D.N.Y. 2014).

Under the principles of contract interpretation, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used

interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Remillard v. Remillard*, 297 Conn. 345, 355 (2010). A "contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself." *Kline v. Kline*, 101 Conn. App. 402, 408 (2007). If the language of a contract is ambiguous, the court "must construe those ambiguities against the drafter." *Petrucelli v. Palmer*, 596 F. Supp. 2d 347, 359 (D.Conn. 2009)(quoting *Ramirez v. Health Net of Northeast, Inc.*, 285 Conn. 1, 13-14 (2008)); *see also, David M. Somers and Associates, P.C. v. Busch*, 283 Conn. 396, 406 n. 10 (2007) ("Although the ... [rule against construing contractual ambiguities against the draftsman] has been applied in the context of insurance contracts, we see no reason to distinguish between insurance companies and other drafters with superior knowledge, particularly in the fiduciary context of the attorney-client relationship as an attorney has a duty to act in the best interests of his or her client"); *Brown v. Starrett City Associates*, No. 09-CV-3282 JBW, 2011 WL 5118438, at *8 (E.D.N.Y. 2011)(attorney drafted the agreement and ambiguities are construed against the drafter); *Babcock v. Rezak*, Docket No. 96-CV-0394E(SC), 2004 WL 1574623 at *4 (W.D.N.Y. 2004)(fee agreement was internally inconsistent and ambiguous, and accordingly, construed against the firm).

## IV.     DISCUSSION

In support of his Amended Application, Attorney Charmoy points to the Retainer Agreement signed over four (4) years before the Petition Date as evidence of the parties' agreement regarding compensation.[8] However, the compensation requested in the Amended Application, and the hourly fee provided in the Retainer Agreement, are not

---

[8]     To the extent that Attorney Charmoy relies on the Amended 2016(b) Disclosure, filed after the May 22 Hearing and the close of evidence, the court views the Amended 2016(b) Disclosure as untimely and affords it little evidentiary value.

13

consistent with the fee disclosed in Form B203. The significance of the discrepancies between the Amended Application, the Retainer Agreement and Form B203 should not be minimized. The mandatory, and continuing, disclosure requirements of Rule 2016 serve an important function of providing notice of the terms and conditions of the attorney's services and compensation to the court and creditors.

Here, the Amended Application seeks the allowance of compensation of $8,650.00 based on fees incurred on an hourly basis.[9] In contrast, Form B203 stated "[f]or legal services, I have agreed to accept … $3,750.00." Form B203 also disclosed that the filing fee of $310.00 had been paid. In exchange for this disclosed fee, Attorney Charmoy represented that he had agreed that the scope of his representation would include, among other things, preparation and filing of any petition, schedules, statement of affairs and plan, representation of the debtor at the meeting of creditors and confirmation hearing, and negotiations with creditors as necessary. A fair interpretation of the Form B203 is that Attorney Charmoy agreed to provide legal services to Ms. McNeilly for a flat rate of $3,750.00, plus the cost of the filing fee of $310.00. Nowhere on Form B203 did Attorney Charmoy disclose any agreement for compensation calculated on a per hour basis.

Form B203 was internally inconsistent as to the scope of the services to be provided. In one part, the legal services to be provided included, "representation of the debtor in adversary proceedings and other contested bankruptcy matters," but later excluded services such as representation in "contested matters." Compare ¶ 6(d) with ¶ 7 of ECF No. 1-2, p. 8. This discrepancy caused Form B203 to be ambiguous and leaves

---

[9] In particular, the Amended Application seeks compensation for 26.6 hours of legal services provided at a blended rate of $325.19 per hour.

14

open the question of what the parties' agreement (if any) truly was regarding "contested bankruptcy matters" versus "contested matters."

Further, in contravention of the instructions to Form B203, Attorney Charmoy neglected to file or append the Retainer Agreement. If Attorney Charmoy had included the Retainer Agreement, the court and creditors may have had notice that Attorney Charmoy was retained on an hourly basis. However, a review of the Retainer Agreement reveals that the scope of representation agreed to in 2010 did not include "contested" matters. The scope of the legal services as set forth in the Retainer Agreement included services related to "uncontested" motions (i.e. "prosecution of uncontested lien avoidance motions pursuant to 11 U.S.C. § 522 and 11 U.S.C. § 506 and any and all work necessary to confirm an uncontested Chapter 13 Plan").[10] Based upon the Retainer Agreement, there was no agreement regarding "contested" matters and a new agreement would have been required. *See*, ¶ 2 of the Retainer Agreement. In any event, the court gives the unfiled Retainer Agreement from 2010 less weight than Form B203 filed on the Petition Date.

Attorney Charmoy presented no evidence that he provided notice to Ms. McNeilly that the motion filed pursuant to § 506 had become contested, or that he and Ms. McNeilly would need to – or had -- entered into a new agreement regarding compensation for legal services provided in connection with the Contested § 506(a) Motion. Nonetheless, according to his Amended Application, Attorney Charmoy spent approximately 12.2 hours of time valued at $3,660.00 addressing the Contested § 506(a) Motion.

---

[10] The court notes that the evidence suggests that Ms. McNeilly may not have had a clear understanding of the import of this limitation in Attorney Charmoy's representation. *See* ¶ 7 above and testimony of Ms. McNeilly that she did not read or understand the Retainer Agreement. Pursuant to Rule 1.2(c) of the Connecticut Rules of Professional Conduct, an attorney can limit the scope of representation, but only if the client gives informed consent and the limitation is reasonable under the circumstances.

While the court appreciates the value of the services that were provided relative to the Contested § 506(a) Motion and finds them to be reasonable, the importance of an accurate, complete and continuous Rule 2016(b) disclosure obligation cannot be minimized. The disclosure requirements of Rule 2016 play an important role in the court's oversight of professional compensation. Congress provided through §§ 329 and 330 of the Bankruptcy Code that bankruptcy courts review and approve attorney compensation in consumer bankruptcy cases like this one. Approving compensation in amounts or for terms not disclosed would degrade the importance of Rule 2016. In consequence, the court concludes that compensation here shall be limited to the amount of $4,060.00 as disclosed in Form B203 in large part because there was no disclosure of any other agreement.

Based on the record before it, the court concludes that a fee of $4,060.00 is reasonable for the legal services rendered in this chapter 13 bankruptcy proceeding. The court notes that although this District has not adopted a local rule regarding an amount of fees that are considered *per se* reasonable for a chapter 13 proceeding, many districts have adopted rules providing that chapter 13 legal fees in the range of $3,500.00 to $4,500.00 are presumed to be reasonable. *See*, Rule 13-7 of the Local Rules for the United States Bankruptcy Court District of Massachusetts. The record of this case and a review of the time records submitted with the Amended Application demonstrate – and Ms. McNeilly does not dispute – that Attorney Charmoy spent substantial time providing assistance to Ms. McNeilly, including preparing and filing the petition and schedules, attending the § 341 meeting, preparing a chapter 13 plan, and advising her on the bankruptcy process. These services were necessary and provided a benefit to Ms.

McNeilly in her bankruptcy case. Accordingly, the fee of $4,060.00 shall be allowed as compensation.

## V. CONCLUSION

The fee dispute here centered on Ms. McNeilly's contention that she had fully paid Attorney Charmoy. After review of the evidence including the testimony of the parties and the exhibits admitted during the May 22 Hearing, the court finds that Ms. McNeilly agreed to pay Attorney Charmoy $4,060.00 for legal fees and costs incurred in this chapter 13 case. Ms. McNeilly paid Attorney Charmoy $2,700.00 to be applied to bankruptcy-related fees and the remaining balance owed to Attorney Charmoy is $1,360.00. All other claims for legal fees and expenses must be disallowed due to the lack of evidence of a clear, unambiguous agreement by the debtor to pay legal fees greater than those disclosed in the Form B203 for the time spent on the Contested 506 Motion.

NOW THEREFORE, it is hereby

ORDERED, that the Amended Application is GRANTED in part, and Attorney Charmoy is allowed Four Thousand, Sixty ($4,060.00) Dollars, as compensation for legal services rendered in this case with One Thousand, Three Hundred Sixty ($1,360.00) Dollars remaining due.

Dated on August 28, 2017, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut